# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| *IN RE: HOTEL TVPRA LITIGATION*[1] | : | Case Nos. 2:22-cv-1924; 2:22-cv-2682; |
| | : | 2:22-cv-2690; 2:22-cv-2734; 2:22-cv-3080; |
| | : | 2:22-cv-3256; 2:22-cv-3258; 2:22-cv-3340; |
| | : | 2:22-cv-3416; 2:22-cv-3766; 2:22-cv-3767; |
| | : | 2:22-cv-3768; 2:22-cv-3769; 2:22-cv-3770; |
| | : | 2:22-cv-3771; 2:22-cv-3772; 2:22-cv-3773; |
| | : | 2:22-cv-3774; 2:22-cv-3776; 2:22-cv-3778; |
| | : | 2:22-cv-3782; 2:22-cv-3784; 2:22-cv-3786; |
| | : | 2:22-cv-3787; 2:22-cv-3788; 2:22-cv-3797; |
| | : | 2:22-cv-3798; 2:22-cv-3799; 2:22-cv-3811; |
| | : | 2:22-cv-3837; 2:22-cv-3839; 2:22-cv-3842; |
| | : | 2:22-cv-3844; 2:22-cv-3845; 2:22-cv-3846 |
| | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |

## OPINION & ORDER

This matter comes before this Court pursuant to this Court's February 1, 2023 Order requiring each party to address the issue of the most appropriate venue for each of the above-identified related cases. (*L.G. v. Red Roof Inns, Inc. et al.*, Case No: 22-cv-1924; ECF No. 25).[2] As set forth more fully below, this Court **DENIES** Defendants' Motion in *L.G.* to Change Venue. (*L.G.*, ECF No. 11). This Court also **DENIES** Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLCs' Motion to Transfer Venue. (*M.H. v. Red Roof Inns, Inc. et al.*, Case No. 22-

---

[1] For the convenience of the parties and for administrative purposes, this Court will collectively refer to the above captioned cases and all related cases as "*In re Hotel TVPRA Litigation*." The clerk is **DIRECTED** to file this Opinion & Order in **ONLY** those cases identified in the caption.

[2] Because there are different defendants across the thirty-five cases at issue, but all parties filed the same briefs in each case to which they were a party, for ease, this Court will only cite to the records of four representative cases of the above captioned cases across which all of the parties responded. These are: *L.G. v. Red Roof Inns, Inc. et al.*, Case No: 22-cv-1924; *M.H. v. Red Roof Inns, Inc. et al.*, Case No. 2:22-cv-3258; *S.C. v. Wyndham Hotels & Resorts, Inc. et al.*, Case No. 2:22-cv-2734; and *J.C. v. G6 Hospitality LLC*, Case No. 2:22-cv-3340.

cv-3258, ECF No. 15). Unless otherwise indicated below, this Court will retain jurisdiction over the above-captioned cases. The following cases are **TRANSFERRED** to:

- United States District Court for the Northern District of Ohio: *R.C.*, 2:22-cv-2690; *S.C.*, 2:22-cv-2734; *J.S.*, 2:22-cv-3080; *J.C.*, 2:22-cv-3340; and *C.M.*, 2:22-cv-3798.

- United States District Court for the Eastern District of New York: *J.T.*, 2:22-cv-3842.

The stays in the above-identified cases are hereby **LIFTED**. (*S.C.* ECF No. 37). The presiding Magistrate Judge will set a conference by separate order.

## I.    BACKGROUND

Plaintiffs in the above captioned cases allege that they are victims of sex trafficking that occurred at hotel properties across the country and that the hotel defendants are liable for damages under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595. (*L.G.*, ECF No. 1, ¶ 138). Plaintiffs allege that Defendants knew or should have known Plaintiffs were trafficked on their properties and they had a statutory obligation not to benefit financially from the commercial trafficking ventures. 18 U.S.C. § 1595(a); (*Id.*, ¶ 38). Plaintiffs assert that Defendants "hewed to a common policy of harboring known and suspected human traffickers in exchange for financial benefit" and "actively ignoring signs of ongoing human trafficking" in their hotels. (*Id.*; ¶¶ 41–42). Finally, Plaintiffs in the above-captioned cases allege that they were trafficked outside of the Southern District of Ohio, Eastern Division, where this Court sits. (*L.G.*, ECF No. 25 at 2).

Plaintiffs bring these actions against seven defendants.

- (1) Red Roof Inns, Inc. and (2) Red Roof Franchising, LLC (together "Red Roof") are Delaware corporations and have their principal places of business in New Albany, Ohio (*S.C.*, ECF No. 9, ¶ 33);

- (3) Wyndham Hotel & Resorts, Inc. ("Wyndham") is a Delaware corporation and has its principal place of business in Parsippany, New Jersey (*Id.*, ¶ 21);

- (4) Choice Hotels International, Inc. ("Choice") is a Delaware corporation and has its principal place of business in Rockville, Maryland (*S.C.*, ECF No. 48 at 5);

- (5) Six Continents Hotels, Inc. and (6) Holiday Hospitality Franchising, LLC (together "IHG") are both Delaware corporations and they have their principal places of business in Georgia (*S.C.*, ECF No. 46 at 8); and

- (7) G6 Hospitality, LLC ("G6") is a Delaware corporation with its principal place of business in Carrollton, Texas (*J.C.*, ECF No. 1, ¶ 22).

On July 6, 2022, Defendants Red Roof in *L.G. v. Red Roof Inns, Inc., et al*, filed a Motion to Change Venue to the United States District Court for the District of Maryland. (*L.G.*, ECF No. 11 at 3). Pursuant to 28 U.S.C. § 1404, Defendants argued that because Plaintiff was a citizen of Maryland and the sex trafficking alleged occurred almost exclusively in Maryland, this Court should transfer the matter. (*Id.*). The Defendants reasoned that other than Red Roof having its principal place of business in Ohio, the Complaint failed to allege a "plausible connection" to the state. (*Id.*). Plaintiff opposed the motion. (*L.G.*, ECF No. 13). On September 7, 2022, the Magistrate Judge denied Defendants' Motion because the Defendants in *L.G.* resided in and the Defendants' conduct at issue—namely, allegations of "Defendants' corporate knowledge and lack of proper training to hamper and detect trafficking on their properties"—occurred in this District. (*L.G.*, ECF No. 15 at 8).

In the interim, this Court issued two opinions in *C.T. v. Red Roof Inns, Inc. et al.*—an action brought against Red Roof, Wyndham, Best Western International, Inc. ("BWI"), and LaQuinta. (*C.T.*, Case No. 2:21-cv-5022; ECF Nos. 127; 171). This Court concluded that venue was improper in the Southern District of Ohio because this Court lacked personal jurisdiction over Defendants Wyndham and BWI, and there was another district in which the litigation could have been brought and where venue was proper. (*C.T.*, ECF No. 127 at 13–14). Instead of severing Defendants Red Roof, this Court transferred the entire matter to the Middle District of Florida on December 20,

2022, where C.T. had been trafficked. (*Id.*). The Court reasoned that there is a "strong interest in litigating the matter in [the venue] where [the plaintiff] was allegedly trafficked and evidence and witnesses can be more easily accessed." (*C.T.*, ECF No. 171 at 16).

Following this Court's ruling in *C.T.*, on January 20, 2023, the Magistrate Judge withdrew her Opinion denying transfer in *L.G.*, citing *C.T.* and reasoning that there is strong interest in litigating the case where the alleged trafficking events occurred. (*L.G.*, ECF No. 22 at 1–2). Because Plaintiff L.G. was allegedly trafficked in Maryland and Virginia, not Ohio, the Magistrate Judge stayed the action pending resolution of Defendants' Motion to Transfer. (ECF No. 22).

Based on the venue-related concerns raised by the Magistrate Judge in *L.G.*, the Magistrate Judge issued Show Cause Orders in all of the above-captioned cases, except for *L.G.*, directing Plaintiffs to show cause why this Court should not *sua sponte* transfer the cases to a different venue per its discretionary authority under 28 U.S.C. § 1404. (*L.G.*, ECF No. 25 at 2). On January 23, 2023, Plaintiff L.G. filed a Motion for Hearing and Oral Argument on the Motion to Transfer Venue. (*L.G.*, ECF No. 24). Because the Plaintiffs in the above captioned cases allege they were trafficked outside of the Southern District of Ohio, Eastern Division, they are factually similar to *L.G.* and *C.T.* Given the Defendants' pattern of challenging venue and anticipating future motions to transfer, this Court ordered oral argument on the issue of the appropriate venue in all thirty-five cases. (*L.G.*, ECF No. 25).

There are more than forty cases alleging violation of the TVPRA by hotel defendants pending before this Court. Important to the history of these cases, Plaintiffs attempted to centralize these cases as multi-district litigation. (*Id.*). On February 5, 2020, the Judicial Panel on Multidistrict Litigation (JPML) concluded that centralization, however, would not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation.

4

*In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1355 (U.S. Jud. Pan. Mult. Lit. 2020). Given the number of cases expected to be filed, the panel did acknowledge that where multiple related actions were pending in a single district, coordination before a single judge was preferable. *Id.* at 1356.

## II.    LAW & ANALYSIS

### A.  Failure to Serve

Collectively, Defendants assert that Plaintiffs have failed to serve them in twelve of the thirty-five above captioned cases.[3] (*L.G.*, ECF No. 27 at 1 n. 1). Defendants only filed their briefings in the cases in which they received proper service so as not to waive the defense of untimely service. Defendants, however, addressed all the above captioned cases in their briefings in response to this Court's order. Plaintiffs allege that they had reached out already to Defendants to waive service prior to the January Show Cause Orders staying the above captioned cases and that Defendants were in the process of executing the waivers. (*L.G.*, ECF No. 30 at 1 n. 2). Because the cases were stayed, however, Plaintiffs allege that Defendants stopped executing the waivers of service, and Plaintiffs were unable to complete waiver of service process. (*Id.*).

A party's appearance in a lawsuit does not waive that party's ability to file a motion to dismiss for lack of sufficient service. *King v. Taylor*, 694 F.3d 650 (6th Cir. 2012) (noting that a written appearance filed by defendant's counsel one month before defendant moved for dismissal

---

[3] (1) *A.S. vs. Red Roof Inns, et al.*, Case No. 2:22-cv-03846, filed October 28, 2022; (2) *D.T. vs. Red Roof Inns, Inc., et al.*, Case No. 2:22-cv-03844, filed October 28, 2022; (3) *E.C. vs. Choice Hotels International, Inc., et al.*, Case No. 2:22-cv-03811, filed October 26, 2022; (4) *J.T. vs. Choice Hotels International, et al.*, Case No. 2:22-cv-03842, filed October 28, 2022; (5) *K.F. vs. Choice Hotels International, et al.*, Case No. 2:22-cv-03839, filed October 28, 2022; (6) *K.W. vs. Red Roof Inns, Inc., et al.*, Case Nos. 2:22-cv-03845, filed October 28, 2022: (7) *G.M. v. Choice Hotels Int'l, Inc. et al.*, Case Nos. 2:22-3788, filed October 24, 2022; (8) *A.M. v. Wyndham Hotels & Resorts, Inc. et al.*, Case No. 2:22- cv-3797, filed October 25, 2022; (9) *C.M. v. Choice Hotels Int'l, Inc. et al.*, Case No. 2:22-cv-3798, filed October 25, 2022; (10) *C.C. v. Wyndham Hotels & Resorts, Inc. et al.*, Case No. 2:22-cv-3799, filed October 25, 2022; (11) *T.D.P. v. Choice Hotels Int'l, Inc.*, Case No. 2:22-cv-3837, filed October 28, 2022; and (12) *J.S. v. Choice Hotels Int'l, Inc.*, Case No. 2:22-cv-3080, filed August 9, 2022.

based on lack of service does not constitute forfeiture).  Although Federal Rule of Civil Procedure 12(b)(5) requires a party asserting the defense of insufficient service of process to do so "in the responsive pleading if one is required," *see* Fed. R. Civ. P. 12(b), Defendants responded to this Court's order on the specific issue of venue, not to Plaintiffs' complaints. Defendants' responses do not constitute responsive pleadings.

Further, the issue of improper service is not currently before this Court. Defendants, by appearing in some of the above captioned cases for the first time, have not waived their ability to challenge lack of proper service in the future. The federal district courts have inherent power to stay proceedings, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (holding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket"); therefore, this Court can order the parties to address the issue of venue, as a threshold matter, to ensure the most efficient adjudication of these cases moving forward.

**B.  Show Cause Orders**

Plaintiffs, except M.H., argue that this Court should vacate the Magistrate Judge's Show Cause Orders claiming that it is an abuse of discretion to transfer cases in which the "interest of justice weigh in favor [of] venue in this Court." (*L.G.*, ECF No. 28 at 31). Under 28 U.S.C. § 1404, Plaintiffs assert that the burden to prove that transfer is appropriate falls on the movant; therefore, it is an error of law to require Plaintiffs to prove transfer is not warranted. (*Id.*).

Plaintiffs misstate the law as it pertains to this situation. A movant seeking transfer under 28 U.S.C. § 1404(a) typically carries the burden, but § 1404 allows a court, not just the parties, to raise the issue of transfer to a more appropriate venue. A district court may transfer a case *sua sponte*. *Carver v. Knox County*, 887 F.2d 1287, 1291 (6th Cir. 1989). Where a court considers *sua sponte* transfer of venue, as it did here, it should inform the parties of its considerations and give

them an opportunity to be heard on the matter. *Moore v. Rohm Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006). This Court provided the parties an opportunity to be heard, and each party responded with two briefs. (*L.G.*, ECF No. 25). Therefore, the Magistrate Judge did not err in issuing the Show Cause Orders but acted in accordance with this Court's ability to raise the issue of venue transfer *sua sponte* pursuant to 28 U.S.C. § 1404(a).

### C. Venue Generally

#### *1. Standard of Review*

Venue is proper under 28 U.S.C. § 1391(b) in: (1) any district in which the defendant resides, if all defendants are residents of the state; (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) if there is no other district where the action may be brought, then where the court has personal jurisdiction over the defendant. The statute defines the residence of a corporate defendant as "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). If litigation is brought against a corporate defendant that is subject to the personal jurisdiction of a state which has more than one judicial district, "such corporation will be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." 28 U.S.C. § 1391(d). Venue may be proper in multiple districts.

#### *2. Analyzing Personal Jurisdiction*

Plaintiffs allege that Defendants argue outside the scope of this briefing. (*L.G.*, ECF No. 30 at 14). While this Court did instruct the parties to brief the issue of appropriate venue, the issue

of this Court's personal jurisdiction over the non-Red Roof defendants is step one in the required venue analysis. Defendants are corporations and their residency requires a nontraditional analysis, *See* 28 U.S.C. § 1391(c)(2). Ohio has two federal districts, so this Court must treat the Southern District of Ohio as if it is a separate state for purposes of venue if any of the defendants are deemed to reside here. As described more fully below, proper venue for each of the thirty-five cases at issue can be established pursuant to § 1391(b)(1) & (b)(2). To assess whether venue is proper under section § 1391(b)(1) for corporate defendants, however, this Court must first assess whether the Southern District of Ohio has personal jurisdiction over them. 28 U.S.C. § 1391 (c)(2) & (d). While a plaintiff is not required to choose the best venue, venue must comply with federal guidelines.

### D.  Personal Jurisdiction

The above-captioned cases fall into three buckets: (1) twenty-two cases[4] brought solely against Defendants Red Roof; (2) ten cases[5] brought against multiple hotel defendants; (3) and three cases[6] brought against a single, non-Red Roof hotel defendant.

#### 1.  Standard of Review

Ohio's long-arm statute and the U.S. Constitution are coextensive. OHIO REV. CODE § 2307.382(C). Personal jurisdiction exists over a defendant "if the defendant is amenable to service

---

[4] (1) *L.G.*, Case No. 2:22-cv-1924; (2) *A.K.W.*, Case No. 2:22-cv-3256; (3) *M.H.*, Case No. 2:22-cv-3258; (4) *H.C.*, Case No. 2:22-cv-3416; (5) *G.G.*, 2:22-cv-3766; (6) *A.Y.S.*, Case No. 2:22-cv-3767; (7) *A.Y.*, Case No. 2:22-cv-3768; (8) *K.L.*, Case No. 2:22-cv-3769: (9) *R.C.C.*, Case No. 2:22-cv-3770; (10) *N.B.*, Case No. 2:22-cv-3771; (11) *C.B.*, Case No. 2:22-cv-3772; (12) *K.R.L.*, Case No. 2:22-cv-3773; (13) *R.H.*, Case No. 2:22-cv-3774; (14) *J.B.*, Case No. 2:22-cv-3776; (15) *H.S.*, Case No. 2:22-cv-3778; (16) *R.K.*, Case No. 2:22-cv-3782; (17) *R.Z.*, Case No. 2:22-cv-3784; (18) *D.K.*, Case No. 2:22-cv-3786; (19) *K.D.*, Case No. 2:22-cv-3787; (20) *D.T.*, Case No. 2:22-cv-3844; (21) *K.W.*, Case No. 2:22-cv-3845; and (22) *A.S.*, Case No. 2:22-cv-3846.
[5] (1) *R.C.*, Case No. 2:22-cv-2690; (2) *S.C.*, Case No. 2:22-cv-2734; (3) *G.M.*, Case No. 2:22-cv-3788; (4) *A.M.*, Case No. 2:22-cv-3797; (5) *C.M.*, Case No. 2:22-cv-3798; (6) *C.C.*, Case No. 2:22-cv-3799; (7) *E.C.*, Case No. 2:22-cv-3811; (8) *K.F.*, Case No. 2:22-cv-3839; (9) *J.T.*, Case No. 2:22-cv-3842; (10) *G.P.*, Case No. 2:22-cv-2682.
[6] (1) *J.S. v. Choice Hotels Int'l, Inc.*, Case No. 2:22-cv-3080; (2) *J.C. v. G6 Hospitality, LLC*, Case No. 2:22-cv-3340; and (3) *T.D.P. v. Choice Hotels Int'l, Inc.*, Case No. 2:22-cv-3837.

8

of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parson*, 289 F. 3d 865, 871 (6th Cir. 2002) (internal citations omitted). Consequently, the maintenance of the suit in that district court should not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 310, 326 (1945). The Fourteenth Amendment's Due Process Clause limits a court's personal jurisdiction over out-of-state corporate defendants. *BNSF Ry Co. v. Tyrrell*, 581 U.S. 402, 405–06 (2017) ("The Fourteenth Amendment's Due Process Clause does not permit a state to hale an out-of-state corporation before its courts when it is not 'at home' in the State and the episode-in-suit occurred elsewhere."). Under this framework, a federal court must have personal jurisdiction over each defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Personal jurisdiction over a defendant may be general or specific. *Id.* at 873. General personal jurisdiction exists when a defendant's contacts are sufficiently "continuous and systematic" to justify jurisdiction over claims unrelated to those contacts. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General personal jurisdiction exists over a corporate defendant where they are considered "at home," meaning its place of incorporation or its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2015). Otherwise, general jurisdiction only exists in "exceptional case[s]" where a "corporation's operations in a forum . . . may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n. 19.

Specific personal jurisdiction exists over an out-of-state defendant who has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires*, 564 U.S. at 293 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The plaintiff must show the defendant "purposefully directed his

activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks omitted).

### 2.  Masha's Law

Masha's Law allows a minor who was a victim of sex trafficking and who suffers an injury because of a violation of the TVPRA to bring suit in any appropriate United States District Court and recover damages. 18 U.S.C. § 2255.

#### a.  Parties' Arguments

Plaintiffs allege that C.C., E.C., K.F., A.M, G.M, T.D.P., and L.G. were minors at the time they were trafficked through Defendants' hotels in the United States. (*L.G.*, ECF No. 30 at 18). Plaintiffs argue that this Court has nationwide personal jurisdiction over minor TVPRA cases, pursuant to 18 U.S.C. § 2255 ("Masha's Law"). (*Id.* at 15). Because statutory nationwide service of process grants a federal district court nationwide personal jurisdiction over any defendant that has minimum contacts with the United States, Plaintiffs assert that this Court has personal jurisdiction over any defendant in these seven cases. (*Id.* at 16). Conversely, Defendants argue Masha's Law requires "a showing that a defendant committed trafficking crimes against a minor Plaintiff." (*S.C.*, ECF No. 44 at 6 (citing H.R. REP. 105-557, 23 (1998)) ("It is the intention of the Committee that only the offender who perpetrated the offense against the minor is liable for damages under this section.")). During oral arguments, Defendants argued that Plaintiffs fail to allege that Defendants acted intentionally to cause or participate in Plaintiffs' trafficking—a requirement to meet the § 2255 pleading standard. Because Plaintiffs have failed to plead sufficiently facts that Defendant trafficked Plaintiffs or caused Plaintiffs' trafficking, pursuant to

18 U.S.C. § 1591, Defendants maintain that nationwide service of process under 18 U.S.C. § 2255 is inapplicable here. (*Id.*).

### b.   Court's Analysis & Findings

The law interpreting 18 U.S.C. § 2255 is far from settled and opinions differ across federal district courts. Some suggest that the legislative history of the statute demonstrates that Congress intended that plaintiff only have a cause of action against those found guilty of a violation of one of the specified statutes. *See Ramsbottom v. Ashton*, No. 3:21-cv-0272, 2022 WL 106733, at *14 (M.D. Tenn. Jan. 11, 2022); *Doe v. City of Gauley Bridge*, No. 2:21-CV-0491, 2022 WL 3587827, at *13 (S.D. W.Va. Aug. 22, 2022). As described more fully below, this Court concludes otherwise because the express language of the statute and traditional canons of statutory interpretation support a different interpretation.

Under the TVPRA, "whoever knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" a sex trafficking act, can be held criminally liable. 18 U.S.C. § 1591(a)(2). Further "any individual who is a victim of a violation of [§ 1591] may bring a civil action against . . . whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a). Additionally:

> Any person who, while a minor, was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such *violation* . . . may sue in any appropriate United States District Court and shall recover the actual damages such person sustains . . . .

18 U.S.C. § 2255(a) (emphasis added). A victim must establish liability as a predicate for the damages award—namely, that the victim's abuse violated a qualifying criminal statute. *Doe v. Boland*, 698 F.3d 877, 880–82 (6th Cir. 2012). This provision authorizes nationwide service of

process because "process may be served in *any district* in which the defendant (A) is an inhabitant; or (B) may be found." 18 U.S.C. § 2255(c)(2).

This Court must determine if 18 U.S.C. § 2255 can be applied to the hotel Defendants such that this Court can establish personal jurisdiction over defendants in cases where Plaintiffs were minors when allegedly trafficked. Defendants argue that Plaintiffs must plead that the corporate hotel defendants intentionally committed the underlying criminal offense.

First, Plaintiffs are not required to plead that Defendants actually committed the trafficking crimes against them. Both the text of 18 U.S.C. §§ 1595 and 2255 require as a predicate that the plaintiff is a "victim of a violation" of 18 U.S.C. § 1591 in the form of human trafficking. A review of circuit precedent demonstrates that the word "violation" under Masha's Law does not require a showing that Defendants were convicted of trafficking crimes. In *Prewett v. Weems*, the Sixth Circuit addressed the meaning of the word "violation" in 18 U.S.C. § 2255. In *Prewett*, the defendant was convicted of one child abuse crime based on seven child pornography videos found on his phone. 749 F.3d 454, 456–57 (6th Cir. 2014). The district court ruled that the defendant violated the underlying child pornography statute seven times, based on the seven videos, and the minimum damages awarded for a violation should be multiplied seven times. *Id.* at 457–58. On appeal, the Defendant argued that he should be liable for only one damage award because he was only convicted on one count. *Id.* The Sixth Circuit explained that "violation" does not mean "conviction." *Id.* at 459. The Court reasoned:

> *First,* the customary meaning of violation tends toward the broad (any failure to conform to a legal standard) rather than the narrow (a criminal conviction). *See, e.g.,* Oxford English Dictionary Online (3d ed. 2012) ("Infringement or breach, flagrant disregard or non-observance of some principle or standard of conduct or procedure". . . ; Black's Law Dictionary (9th ed. 2009) ("An infraction or breach of the law; a transgression ... [or t]he act of breaking or dishonoring the law; the contravention of a right or duty.") . . .

> *Second,* . . . the neighboring provisions of § 2255 use "violation" and "conviction" distinctively, suggesting that the different words have different meanings. Section 2255 applies when a victim shows a *"violation"* of the relevant criminal provisions, but the related criminal-forfeiture statute applies only when the government shows the defendant was "*convicted* of an offense." *Compare* 18 U.S.C. § 2253, *with* 18 U.S.C. § 2255 (emphases added) . . .
>
> *Third,* . . . [a]ddressing RICO's civil-remedies provision, which also contains a "violation" requirement, the Supreme Court held that the statute's language gave "no obvious indication that a civil action can proceed only after a criminal conviction." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 488 (1985) [internal citations omitted]. The Court reasoned that "the term 'violation' does not imply a criminal conviction ... [but rather] refers only to a failure to adhere to legal requirements." *Id.* at 489.

*Id.* at 458. Therefore, a violation is not synonymous with a conviction.

Additionally, 18 U.S.C. § 2255 was designed for a different purpose than the predicate criminal offenses named in the statute—to compensate the victim. Section 2255 provides a broad remedial path for Plaintiffs by establishing a statutory floor for damages, indicating the expansion, not narrowing, of parties who could be held liable. *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012) ("And because the predicate criminal offenses and § 2255 are designed for different purposes, it does not follow that there must be symmetry in liability. In fact, the broad remedial purpose of § 2255—prescribing a minimum amount of statutory damages—would appear to counsel against limiting the scope of civil liability.") A review of the statute's text further supports this conclusion. Congress did not use qualifying language to limit liability to "the offender" or "the perpetrator." S*ee Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources

and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives.").

Further, this Court held in related civil TVPRA civil actions against hotel defendants that that § 1595(a) can be a standalone claim, and civil Defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (Marbley, J.); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (Marbley, J.) (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")).

Because Masha's Law does not require a defendant to be criminally convicted of the predicate offense, it is enough to prove by a preponderance of the evidence that the defendant violated the enumerated statute. *See Smith v. Husband*, 376 F. Supp. 2d 603, 611–12 (E.D. Va. 2005) (examining legislative history to conclude Congress had intended § 2255 to provide a remedy for victims even absent a criminal conviction); *Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (same); *Cisneros v. Aragon*, 485 F.3d 1226, 1232 (10th Cir. 2007) ("assum[ing] that a criminal conviction is not necessary for a defendant to face civil liability under" Masha's Law); *Doe v. Schneider*, 667 F. Supp. 2d 524, 529–530 (E.D. Pa. 2009) (requiring only that proper predicate statute violation is alleged in the complaint, along with supporting facts).

In their respective Complaints, Plaintiffs allege that Defendants "hewed to a common policy of harboring known and suspected human traffickers in exchange for financial benefit" and "actively ignoring signs of ongoing human trafficking" in their hotels." (*L.G.*, ECF No. 1, ¶¶ 41–

42). That allegation supports the claim that Defendants ignored their statutory obligation not to benefit financially from a sex trafficking venture. *See* 18 U.S.C. § 1591(a)(2) ("whoever knowingly . . . benefits, financially or by receiving anything of value, from participation in a [sex trafficking] venture" shall be punished as provided in this section); *N.S. v. Rockett*, No. 3:16-CV-2171, 2018 WL 6920125, at *5 (D. Or. Oct. 19, 2018) (concluding that minor plaintiff's allegations that the male, adult defendant attempted to convince her to send a sexually suggestive photo of herself was sufficient to support the claim that the offender enticed her to display herself sexually for the purposes of producing an image in violation of § 2255).

The TVPRA assigns liability to perpetrators of trafficking, *see* 18 U.S.C. § 1595, implying action as those who "recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person." 18 U.S.C. § 1591(a)(1). But the TVPRA also assigns liability to those who financially benefit from participation in trafficking ventures, *see* 18 U.S.C. §§ 1591(a)(2), 1595(a), regardless of whether those individuals or entities actually carried out the trafficking themselves. Defendants' argument that "turning a blind eye" constitutes an omission, not an intentional act falls short. This Court and others have ruled that "failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence"—implying an intentional failure to act. *M.A. v. Wyndham*, 425 F. Supp. 3d 959, 968 (S.D. Ohio 2019); *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based

on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"). As such, the intent pleading requirement is met equally by alleging both an act and a failure to act.

Therefore, this Court finds that the minor Plaintiffs have pled that Defendants profited financially from a commercial venture with traffickers who rented rooms in their hotels and failed to implement preventative policies. This is sufficient to allege a violation of § 1591 against them such that they can avail themselves of the nationwide service of process provision pursuant to 18 U.S.C. § 2255(c)(2).

The Federal Rules of Civil Procedure set forth the relationship between service of process and personal jurisdiction. Serving a summons or filing a waiver of service will establish personal jurisdiction over defendants when authorized by federal statute. Fed. R. Civ. P. 4(k)(1). Congress thus has the power to confer nationwide personal jurisdiction when it includes a nationwide service of process provision in a statute. *See Med. Mut. of Ohio v. DeSoto*, 245 F.3d 561, 567 (6th Cir. 2001). There, a court conducting an inquiry into personal jurisdiction no longer assesses whether the defendant has minimum contacts with the forum state but instead determines whether a defendant has minimum contacts to the United States. *See DeSoto*, 245 F. 3d at 567; *see also Haile v. Henderson Nat'l Bank*, 657 F. 2d 816, 826 (6th Cir. 1981) (a court should "apply a minimum contacts with the United States analysis" when Congress authorized nationwide service of process because typical limitations on state extra-territorial power had been rendered "simply inapposite").

Defendants have minimum contacts with the United States. They are all incorporated in the United States and have their headquarters and principal places of business in the United States.

*See Redhawk Global, LLC v. World Projects Intern.*, 495 B.R. 368, 377 (S.D. Ohio 2013) (finding that defendants had sufficient minimum contacts with the U.S. where they were shareholders of a corporation incorporated and that had its principal place of business in the U.S, conducted business transactions in the U.S. as members of the board of directors, and lived in the U.S.); *Iron Workers Local Union No. 17 Ins. V. Philip Morris Inc.*, 23 F. Supp. 2d. 796, 803 (N.D. Ohio 1998) (domestic corporations doing business in the United States satisfy the minimum contacts requirement for purposes of personal jurisdiction). They also engage in regular business transactions in their hotels across the United States. *Id.*

This Court has personal jurisdiction over all Defendants in *C.C.*, *E.C.*, *K.F.*, *A.M.*, *G.M.*, *T.D.P.*, and *L.G.* While this Court has personal jurisdiction over the Plaintiffs who were minors at the time of the alleged harm, a nationwide service of process statute does not result necessarily in proper venue nationwide. Importantly, 18 U.S.C. § 2255(c)(1), specifically states that "any action brought under subsection (a) may be brought in the district court of the United States that meets applicable requirements relating to venue under section 1391 of title 28." Here, however, the defendants are corporations, and for purposes of venue, corporations are deemed to reside where they are subject to the personal jurisdiction of a court with respect to the civil action in question. 28 U.S.C. § 1391(c). Because this Court has personal jurisdiction over all defendants named in these seven minor cases, pursuant to 18 U.S.C. § 2255, they all are considered residents of the Southern District of Ohio for venue purposes in these actions. 28 U.S.C. § 1391(b)(1). Therefore, venue is also properly laid in this district for *C.C.*, *E.C.*, *K.F.*, *A.M.*, *G.M.*, *T.D.P.*, and *L.G.*

### 3.  Defendants Red Roof

Defendants Red Roof do not challenge this Court's personal jurisdiction over them. In the twenty-two cases solely brought against Red Roof, venue is proper because this Court has personal

17

jurisdiction over them; therefore, they reside in the Southern District of Ohio. 28 U.S.C. § 1391(b)(1), (c)(2) & (d). Because the location of a corporate defendant's principal place of business is a "paradigm all-purpose forum," *see Daimler*, 571 U.S. at 137, and because Red Roofs' principal places of business are in New Albany, Ohio, within the Southern District of Ohio, this Court has general personal jurisdiction. Since venue can be proper in more than one district, *see Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F.Supp.2d 657, 672 (S.D. Ohio 2011), and for purposes of establishing personal jurisdiction, no one venue is better than the other, this Court need not analyze whether venue is proper for Red Roof under § 1391(b)(2) or (b)(3).

### 4. *Defendants Wyndham, Choice, IHG, and G6*

Other than Defendants Red Roof, none of the other defendants has its principal place of business in Ohio, nor was any other defendant incorporated in Ohio. This Court must determine if there are other factors that provide this Court personal jurisdiction over Plaintiffs' claims against these Defendants such that venue is appropriate in this district.

### a. *Parties' Arguments*

Plaintiffs argue that venue in the Southern District of Ohio, Eastern Division, is proper, and this Court should not disturb Plaintiffs' choice in forum. (*L.G.*, ECF No. 30 at 7–14). Defendants Wyndham, Choice, IHG, and G6 argue that they do not reside in the Southern District of Ohio for purposes of venue; therefore, 28 U.S.C. § 1391(b)(1) cannot be used to find venue proper in this district. (*S.C.*, ECF Nos. 44 at 5, 48 at 11, 46 at 8; *J.C.*, ECF No. 12 at 6–7). They allege that this Court has neither general nor specific personal jurisdiction over them. (*Id.*.). They argue, however, that venue is proper in the district where the trafficking occurred pursuant to 28 U.S.C. § 1391(b)(2). For purposes of §1391(b)(2), the parties dispute what "events or omissions giving rise to the claim" should be considered. Defendants argue that the location where Plaintiffs

18

were trafficked is fundamental to this Court's § 1391(b)(2) analysis. Conversely, Plaintiffs allege that the location of the corporate decision-making—Defendants' headquarters—should be the primary consideration given the beneficiary theory of liability they allege under § 1595 of the TVPRA.

Defendants argue these cases should be transferred. Defendant Wyndham argues that six of the seven cases brought against it must be transferred to another district court because this Court lacks personal jurisdiction over four of them[7] and venue is improper for two of the cases.[8] (*S.C.*, ECF No. 44 at 3). Defendant Choice is named in nine of the above-captioned lawsuits, and alleges that in each case against them, the Plaintiffs were trafficked outside of this district. (*S.C.*, ECF No. 5–7). Of the nine cases in which Choice is a defendant, Plaintiffs in four of the cases[9] were trafficked as minors and nationwide service of process under 28 U.S.C. § 2255 applies; therefore, for purposes of personal jurisdiction analysis, this Court will only consider the remaining five cases[10] against Choice. Defendants IHG are only named in three lawsuits[11] and allege that because the events giving rise to the trafficking occurred outside of this district, this Court lacks personal jurisdiction. (*S.C.*, ECF No. 57 at 3–5). Finally, Defendant G6 is only named in two of the above-captioned cases, and one of the cases[12] involves a Plaintiff who was a minor at the time of trafficking. (*J.C.*, ECF No. 16 at 2–4). Therefore, this Court will only analyze personal jurisdiction over G6 in *J.C.*

---

[7] *A.M.*, *C.C.*, *G.M.*, and *J.T.*
[8] *S.C.* and *C.M.*, which Defendant Wyndham argues is properly venued in the Norther District of Ohio, pursuant to § 1391, because the trafficking occurred in Cleveland and Toledo, respectively.
[9] *E.C.*, *K.F.*, *G.M.*, and *T.D.P.*
[10] *R.C.*, *S.C.*, *J.S.*, *C.M.*, and *J.T.*
[11] *R.C.*, *S.C.*, and *C.M.*
[12] *E.C.*

*b.  Court's Analysis & Findings*

Regardless of where this Court determines to be the location where "a substantial part of the events or omissions giving rise to the claim occurred," *see* 28 U.S.C. § 1391(b)(2), such determination has no impact on the personal jurisdiction analysis for Defendants Wyndham, Choice, IHG, and G6. This is because the trafficking alleged in these claims occurred outside of the Southern District of Ohio, Eastern Division, and these defendants were not incorporated nor have their principal places of business in the Southern District of Ohio. Therefore, venue cannot be proper under § 1391(b)(2) in the Southern District of Ohio, but it could be proper in the districts where Plaintiffs were trafficked or where the corporation defendants are "at home." The same analysis does not apply to Defendants Red Roof who "reside" for purposes of venue in the Southern District of Ohio because their principal place of business is in New Albany, Ohio. *See* 28 U.S.C. § 1391(b)(1).

General personal jurisdiction exists only "when a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Daimler*, 571 U.S. at 118 (quoting *Int'l Shoe*, 326 U.S. at 318). Defendants Wyndham, Choice, IHG, and G6 are not incorporated in Ohio, do not have their principal places of business in Ohio, and do business nationwide. Consistent with this Court's previous rulings, "[t]he existence of franchise locations in Ohio is not sufficient to establish general personal jurisdiction over these Defendants for causes of action not arising from or relating to actions in the forum state because these contacts are not so continuous and systemic as to render Defendants 'at home' in Ohio." *C.T. v. Red Roof Inns, Inc., et al.*, No. 2:19-cv-5384, 2021 WL 602578, at *3 (S.D. Ohio Feb. 16, 2021) (quoting *Daimler*, 571 U.S. at 119) (Marbley, J.). The Supreme Court rejects this interpretation of general personal

jurisdiction because it would subject corporations to general jurisdiction in every state in which they did business. *Daimler*, 571 U.S. at 118–19.

Further, while this court sympathizes with the alleged harms caused to Plaintiffs, these are not the "exceptional case[s]" where a "corporation's operations in a forum other than its principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*, 571 U.S. at 139 n. 19. The general personal jurisdiction inquiry "does not focus solely on the magnitude of the defendant's in-state contacts" but instead "calls for an appraisal of a corporation's activities in their entirety; "a corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF Ry. Co.*, 581 U.S. at 414 (quoting *Daimler*, 571 U.S. at 139, n. 20; 140, n. 20; *compare Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952) (holding that war had forced the defendant corporation's owner to relocate temporarily the enterprise from the Philippines to Ohio which became the "center of the corporation's wartime activities") *with BNSF Ry. Co.*, 581 U.S. at 414 (despite defendant railroad having over 2,000 miles of railroad track and more than 2,000 employees in Montana, general personal jurisdiction could not exist over claims that were unrelated to any activity occurring in Montana).

A court may also have specific personal jurisdiction over parties, so long as there are minimum contacts between the out-of-state defendant and the forum state, in order to comply with notions of constitutional due process. See *Goodyear Dunlop Tires*, 564 U.S. at 293. The requirement of "minimum contacts" serves a two-fold purpose: "[i]t protects the defendant against the burdens of litigating in a distant or inconvenient forum"; and "it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292

21

(1980). To show minimum contacts between an out-of-state defendant and the forum state, the defendant must have at least "aimed" its challenged conduct at the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984); see also *Doe S.W. v Lorain-Elyria Motel, Inc.*, 2:19-CV-1194, 2020 WL 1244192, at *3 (S.D. Ohio. Mar. 16, 2020) (Marbley, J.) (requiring at least "causal connection" between defendant's conduct in Ohio and harm to the plaintiff to exercise personal jurisdiction).

The Sixth Circuit has set forth three requirements to exercise specific personal jurisdiction. First, the defendant must "purposefully avail" himself of the privilege of acting in the forum state or causing a consequence in the forum state. *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014). Second, the cause of action must arise from the defendant's activities in the state. *Id.* Third, the acts or consequences giving rise to specific jurisdiction must have a "substantial enough connection with the forum state" to make such jurisdiction reasonable. *Id.* In determining whether jurisdiction is "reasonable," a court will consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief in that particular forum. *Id.* at 508 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). A court will not have personal jurisdiction over Defendants whose contacts with the forum state are attenuated or the result of "the unilateral activity of another party or a third person." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2022). Because this court analyzes personal jurisdiction over corporate defendants for purposes of venue, this Court must treat the Southern District of Ohio as if it were its own state when conducting analysis of specific personal jurisdiction. 28 U.S.C. § 1391(d).

Here, Plaintiffs fail to allege that the harm caused to them arose out of Defendants Wyndham, Choice, IHG, and G6s' activities in the Southern District of Ohio; therefore, failing prong two of the Sixth Circuit's three-part test. *Beydoun*, 768 F.3d at 505. In fact, none of the non-

Red Roof Defendants' activities results in any contacts with the Southern District of Ohio because: (1) Plaintiffs were trafficked on Defendants' branded hotels either in the Northern District of Ohio or in other states; and (2) any corporate decision-making connected to the alleged trafficking were made in Defendants' headquarters located in other states.

For those actions in which the Plaintiff was trafficked in the Northern District of Ohio, it is important for this Court to clarify that the federal district courts of Ohio retain specific personal jurisdiction over those cases. Because Defendants operated hotels in the Northern District of Ohio in which the trafficking occurred, they have sufficiently "aimed" the challenged conduct at Ohio to establish minimum contacts within the whole state. *Calder*, 465 U.S. at 789. Because the personal jurisdiction analysis is slightly different for purposes of establishing proper venue for corporate defendants, however, treating the Southern District of Ohio as its own "state" makes it such that this specific court does not have personal jurisdiction over these defendants for purposes of establishing residency under the venue statute.[13] Therefore, venue is improper here.

There is one case, *J.T.*, in which Red Roof, Wyndham, and Choice are named as defendants, where the Plaintiff was trafficked in the Eastern District of New York. *J.T.*, 2:22-cv-3842. This court lacks both general and specific personal jurisdiction over Wyndham and Choice in that case because the corporations are not considered at home here, and the subject of the challenged conduct was not aimed at Ohio, but instead New York.

---

[13] The cases in which Plaintiffs were trafficked in the Northern District of Ohio, there are non-Red Roof defendants named, and Plaintiffs were not minors at the time of trafficking include: *R.C.*, *S.C.*, *J.S.*, *J.C.*, *C.M.* While both federal district courts in Ohio may retain personal jurisdiction over the defendants named in these five cases, as explained *supra*, venue still is improper in the Southern District of Ohio.

*c.  Discretionary Transfer*

Given that venue is improper for five of the multi-defendant cases[14] and this Court lacks personal jurisdiction over Defendants Wyndham and Choice in another,[15] this Court must either dismiss the actions without prejudice or transfer them to a district in which the suits could have been brought at the time they were filed if it is in the interest of justice. 28 U.S.C. §§ 1406(a) (giving a federal district court authority to dismiss or transfer a case, if in the interest of justice, filed in an improper venue); 28 U.S.C. § 1631 (authorizing a district court to transfer a case, if in the interest of justice, to cure want of jurisdiction); *see also Cosmichrome Inc. v. Spectra Chrome, LLC*, 504 Fed. App'x 468, 472 (6th Cir. 2012) (acknowledging that "a district court has the power to *sua sponte* transfer a case"). While guidance on what constitutes "in the interest of justice" is limited, the Sixth Circuit appears to focus on whether the plaintiff's decision to initiate the action in the original district was reasonable. *Sherman v. Biglari*, 2020 WL 6273935, at * 4 (N.D. Ohio Oct. 26, 2020) (citing *Stanifer*, 564 F.3d at 456). The presumption "should be in favor of transfer as the normal procedure, dismissal is only appropriate in unusual circumstance." *Id.* at 459–60 (quoting 3 Charles Alan Wright et al., Federal Practice and Procedure § 3827 at 605 (3d ed. 1998)).

Excluding the cases in which there is personal jurisdiction in this district due to the minor status of the plaintiffs and one case where the trafficking occurred in the Southern District of Ohio, there are six remaining cases[16] in which Defendants Wyndham, Choice, IHG, and G6 are defendants. In five of the cases,[17] the trafficking occurred in the Northern District of Ohio, and in

---

[14] *R.C.*, *S.C.*, *J.S.*, *J.C.*, and *C.M.*
[15] *J.T.*
[16] *R.C.*, *S.C.*, *J.S.*, *J.C.*, *C.M.*, and *J.T.*
[17] *R.C.*, *S.C.*, *J.S.*, *J.C.*, and *C.M.*

one of the cases[18] the trafficking occurred in the Eastern District of New York. Further, Defendants Red Roof are named as defendants in *S.C.* and *J.T.*, over whom this Court has personal jurisdiction.

The record does not indicate that Plaintiffs intentionally abused the judicial process by filing their actions here. A review of the complaints filed in these six cases indicates that Plaintiffs presumably thought there was an arguable basis for jurisdiction, whether because of the location of the trafficking or some of the Defendants' actions in this district. *See, e.g., Nation v. U.S. Gov't,* 512 F. Supp. 121 (N.D. Ohio 1981) (jurisdiction proper as to some, but not all, defendants); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.,* 401 F. Supp. 2d 415 (E.D. Pa. 2005) (defendant corporation subject to nationwide service of process under the Clayton Act); *Bearse v. Main Street Inv.,* 170 F. Supp. 2d 107 (D. Mass. 2001) (persons alleged to be agents of defendant corporation visited the plaintiff in the forum state); *DeMoss v. First Artists Production Co.,* 571 F. Supp. 409 (N.D. Ohio 1983) (forum court was proper venue for plaintiff's Securities Exchange Act claims, but not plaintiff's RICO claims); *but see Stanifer v. Brannan*, 564 F. 3d 455, 457 (6th Cir. 2009) (finding plaintiff filed suit "without having the slightest reason to believe" it could establish personal jurisdiction in the Western District of Kentucky, where he resided, for a car accident that occurred in Alabama against two Alabama defendants); *Sherman*, 2020 WL 6273935, at * 9 (interest of justice was served by dismissal where plaintiff, who was pro se but an attorney with extensive litigation experience, pled no facts that connected the defendants to Ohio).

Therefore, this Court exercises its discretion to transfer the following six cases to districts where venue is proper and personal jurisdiction exists: (1) *R.C.*, 2:22-cv-2690; (2) *S.C.*, 2:22-cv-2734; (3) *J.S.*, 2:22-cv-3080; (4) *J.C.*, 2:22-cv-3340; (5) *C.M.*, 2:22-cv-3798; and (6) *J.T.*, 2:22-cv-3842. As discussed more fully below *G.P.*, Case No. 2:22-cv-2682, is appropriately venued in

---

[18] *J.T.*

this district because G.P. was trafficked in the Southern District of Ohio, albeit the Western Division.[19] It should not be transferred despite Defendant Wyndham being named in the matter.

### E.  Severing Non-Red Roof Defendants

Federal Rule of Civil Procedure 21 states that a court "may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." A court considers "principles of fundamental fairness and judicial efficiency" in exercising its discretion to sever under Rule 21. 4 Moore's Federal Practice § 21.02(4). Factors going into this deliberation may include: (1) "Whether the claims arise out of the same transaction or occurrence"; (2) "whether the claims present some common questions of law or fact"; (3) "whether settlement of the claims or judicial economy would be facilitated"; (4) "whether prejudice would be avoided if severance were granted"; and (5) "whether different witnesses and documentary proof are required for separate claims." *Reynolds v. Merck Sharp & Dohme Corp.*, No. 3:15-CV-397, 2016 WL 3090951, at *3 (N.D. Ohio June 2, 2016) (internal citation omitted).

This Court finds that judicial efficiency does not support severance of the non-Red Roof Defendants from the eight cases in which Red Rood is also named as a defendant.[20] The claims against the non-Red Roof defendants in the multi-defendant litigation arise out of the same alleged harm to Plaintiffs. Severing the claims and transferring them to two distinct jurisdictions would be unlikely to further judicial economy since many of the same witnesses and documentary proof would be offered against each defendant. *Kramer v. Textron Aviation, Inc.*, No. 1:19-CV-215, 2020 WL 4760191, at *5 (E.D. Ky. Jan 28, 2020). Although the same plaintiff was trafficked

---

[19] G.P. was trafficked in Cincinnati and Sharonville, Ohio, which lay in the Western Division of the Southern District of Ohio. Per Local Rule 82.1(c), however, "[a]n action against a defendant or defendants resident in this District shall be filed at the location of court that serves a county in which at least one defendant resides." Because Defendants Red Roof are named in *G.P.*, and because they reside in New Albany, Ohio, Franklin County where their principal place of business is located, this case is properly venued in the Eastern Division, which serves Franklin County.
[20] These cases include: *G.P.*, *S.C.*, *G.M.*, *A.M.*, *C.C.*, *E.C.*, *K.F.*, and *J.T.*

across several defendants' properties, Plaintiffs' claims against Defendants present common questions of law as to how the beneficiary theory of § 1595(a) should be applied to corporate entities. Further, Defendants have given this Court no indication that failure to sever would prejudice them. Therefore, this Court will not sever any of the claims against the non-Red Roof defendants where this Court lacks personal jurisdiction or venue is improper in the cases in which Red Roof is also named. Instead, this Court exercises its authority to transfer the matters under § 1404(a).

### F.  Venue Transfer Pursuant to 28 U.S.C. § 1404

#### 1.  Parties' Arguments

The bulk of Plaintiffs' argument focuses on transfer pursuant to 28 U.S.C. § 1404(a) and raise, seven arguments: (1) Plaintiffs' choice in forum should be given substantial deference; (2) given the number of related TVPRA cases this Court has tried, it is the preeminent authority to adjudicate these matters; (3) trying all cases in one district ensures efficient use of time, money, and resources; (4) given technological advances, convenience of witnesses and access to discovery is the same regardless of the location; (5) Defendants fail to demonstrate that any potential witnesses are unwilling to attend trial in this district; (6) transferring these cases will scatter them across the country; and (7) for Defendants Red Roof, this district provides easy access to corporate documents, corporate witnesses, and franchisee witnesses given its proximity to their principal place of business. (*L.G.*, ECF No. 28 at 10–30, 30 at 8–14; *M.H.*, ECF No. 25 at 6–12).

Conversely, Defendants argue that these cases should be litigated in the forum where plaintiffs were trafficked because: (1) physical evidence and important witnesses such as hotel employees, law enforcement, family members, traffickers, and treating physicians likely reside in those forums; (2) this Court has limited ability to subpoena witnesses living beyond a 100-mile

radius; (3) the states in which the trafficking occurred have a greater interest in this litigation than Ohio; (4) many plaintiffs do not live in the Southern District of Ohio; (5) other federal district courts are just as capable of resolving these issues as this Court; and (6) the Southern District of Ohio already has a congested docket. (*L.G.*, ECF No. 27 at 2–8, 29 at 6–12; *S.C.*, ECF Nos. 46 at 12–16, 48 at 19–21, 55 at 2–5, 57 at 5–12; *J.C.*, ECF No. 12 at 8–10; 16 at 4–6).

## 2.  Standard of Review

Even where venue is proper, a district court may exercise its broad discretion to transfer a civil action to a more convenient forum pursuant to § 1404(a). *See Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citing *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)). The threshold issue under § 1404(a) is whether the action could be brought in the transferee court. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). If a case could be brought in the court "the issue becomes whether transfer is justified under the balance of the language of § 1404(a)." *Id.* In balancing convenience, the Court must consider factors such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). Generally, the private interest factors include: "(1) the plaintiff's choice of forum; (2) where the parties reside; (3) the 'location of willing and unwilling witnesses[;]' (4) the location of evidence; and (5) the locus of events that 'gave rise to the dispute.'" *Olin-Marquez v. Arrow Senior Living Management, LLC*, 586 F. Supp. 3d 759, 776 (S.D. Ohio 2022) (Sargus, J.) (internal citations omitted). Public-interest factors include: "(1) the court's interest in judicial economy; (2) docket congestion; (3) local interest in deciding the controversy at home;" (4) "the public's general interest in 'systemic

integrity and fairness'"; and (5) the court's familiarity with the governing law. *Id.* at 778 (citing *Youngblood v. Life Ins. Co. of N. Am.*, No. 3:16-CV-34, 2016 WL 1466559, at *1 (W.D. Ky. Apr. 14, 2016)).

Transfer pursuant to § 1404 must be "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964); *see also Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another."). The balance of convenience "should be strongly in favor of a transfer before such will be granted." *Kay*, 494 F. Supp. 2d at 850. Ultimately, "the decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the trial court*." Levy v. Cain, Watters & Assocs., P.L.L.C.*, No. 2:09-cv-723, 2010 WL 271300, at *9. (S.D. Ohio Jan. 15, 2010); *Reese*, 574 F.3d at 320 ("[a]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."). Finally, § 1404(a) promotes "an individualized case by case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation omitted).

### 3.  *Court's Analysis & Findings*

#### a.  *Plaintiffs' Claims Could Have Been Brought in Proposed Transferee Districts*

First, this Court must assess whether all these actions could be brought in the transferee districts proposed by Defendants. Plaintiffs failed to provide this court with their proposed alternative districts for transfer; therefore, this Court operates off the transferee districts proposed by Defendants.

29

Plaintiffs bring this action under the TVPRA, which provides this court federal subject-matter jurisdiction. *Miller v. Bruenger*, 949 F. 3d 986, 990–91 (6th Cir. 2020) (federal question jurisdiction exists when the cause of action arises under federal law). Therefore, any federal district court will have subject-matter jurisdiction over these cases.

Next, the transferee court must have personal jurisdiction over each of the defendants. At a minimum, there exists specific personal jurisdiction over each defendant in the proposed transferee district because the Plaintiffs were trafficked in those respective forums at Defendants' branded hotels through which Defendants ran their businesses and profited. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (holding that to make a prima facie showing of personal jurisdiction, the plaintiff must establish, with reasonable particularity, sufficient contacts between the defendant and the forum to satisfy the relevant long-arm statute and due process clause). Plaintiffs' claims "result[] from alleged injuries that arise out of or relate to [defendants'] activities" in the forum state. *Burger King Corp.*, 471 U.S. at 472. Any one of the proposed federal district courts would have specific personal jurisdiction over all of the defendants because Plaintiffs' harm arises, at least in part, from being trafficked in Defendants' hotels.

Because there are some cases in which the Defendants do not all reside in the same state and it is already established that venue is proper in this Court for Defendants Red Roof, who reside here, this Court examines the requirements of venue under § 1391(b)(2). Proper venue under § 1391(b)(2) requires that a "substantial part of the events or omissions giving rise" to Plaintiffs' claims have occurred in the transferee district. 28 U.S.C. § 1391(b)(2). The Sixth Circuit's provides limited guidance on how to assess § 1391(b)(2), except for in the context of contract disputes. There, unlike other circuits, the Court declined to limit its assessment to acts or omissions of the defendants and considers plaintiff's activities in the forum. *Compare First of Michigan Corp. v.*

*Bramlet*, 141 F. 3d 260, 264 (6th Cir. 1998) (considering both the plaintiffs and defendants' activities in a contract dispute when evaluating proper venue under 18 U.S.C. § 1391(b)(2)); *with Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F. 3d 1153, 1166 n.11 (10th Cir. 2010) ("Congress meant to require courts to focus on relevant activities of the defendant, not the plaintiff" when making venue decisions); *Daniel v. Am. Bd. of Emergency Medicine*, 428 F. 3d 408, 432 (2d Cir. 2005) (same); *Jenkins Brick Co. v. Bremer*, 321 F. 3d 1366, 1371 (11th Cir. 2003) (same); *Woodke v. Dahm*, 70 F. 3d 983, 985 (8th Cir. 1995) (same).

The cases subjudice, however, are not a result of contract disputes and are distinguishable from *Bramlet*. As previously discussed, venue may be proper in two or more districts, even though the events at issue only occurred in one of the districts. *Capitol Specialty Ins. Corp. v. Splash Dog, LLC*, 801 F. Supp. 2d 657, 671–72 (S.D. Ohio 2011) (citing *Setco Enters. v. Robbins*, 19 F. 3d 1278, 1281 (8th Cir. 1994) (Marbley, J.). Venue is proper in "any forum with a substantial connection to the plaintiff's claim." *Bramlet*, 141 F. 3d at 263. The word "substantial" in § 1391(b)(2) is "intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.* at 672 (quoting *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994)). Consequently, unlike in a contract dispute where the actions of both parties are at issue, this Court should focus its "substantiality" inquiry on the defendant's relevant activities. *Id.*

This Court finds that the "substantial location" theories presented by Plaintiffs and Defendants both meet the "substantiality" standard under § 1391(b)(2). Section 1391(b)(2) requires "that a substantial part—not the majority—of the events giving rise to the claim must occur in the district at issue." *Johnson v. Creighton Univ.*, No. 14-C-4622, 2015 WL 4247781, *7 (N.D. Ill. 2015). First, Plaintiffs allege that defendants "knew or should have known" that they

were benefitting from participation in a commercial, sex trafficking venture. Plaintiffs allege that despite this knowledge, Defendants failed to act to stop the trafficking, which was based on executive-level decisions and company-wide policies of ignoring the alleged harm. Therefore, it is reasonable to conclude that the series of decisions that could result in Defendants' liability under 18 U.S.C. § 1595(a) were made where the executives were located. *United Liberty Life Ins. Co. v. Pinnacle West Capital Corp.*, 149 F.R.D. 558, 562 (S.D. Ohio 1993) (finding venue was proper in Arizona, not Ohio because plaintiff's security fraud action resulted from allegedly misleading annual financial statements that originated from defendant's headquarters in Arizona).

Second, Courts also consider where the effects of a defendant's alleged breached are experienced. *Reilly v. Meffe*, 6 F. Supp. 3d 760, 766 (S.D. Ohio 2014) (citing *Sygnetics, Inc. v. Hops Int'l, Inc.,* No. 12–CV–14328, 2013 WL 1395806, at *3 (E. D. Mich. Apr. 5, 2013)). The proposed transferee districts where Plaintiffs were trafficked were the locations where Defendants' policies of ignoring sex trafficking allegedly were carried out resulting in a substantial, detrimental effect on Plaintiffs. Plaintiffs experienced the alleged harm caused by Defendants' failure to implement corrective policies in the locations where they were trafficked. Because proof that Plaintiffs were in fact trafficked in Defendants' branded hotels is a necessary "historical predicate" to Plaintiffs' claims, the forums where the trafficking occurred also meet the "substantiality" definition. *Davis v. Howse*, No. 02-C-5549, 2003 WL 21317289, *4 (N.D. Ill. 2003) (venue was proper for Lanham Act and negligence claims because defendant marketed, distributed, and sold the allegedly infringing album in the district which was the "historical predicate" of plaintiff's claim); *see also Rooney v. Walt Disney World Co.*, No. 02-12433, 2003 WL 22937728, at *6 (D. Mass. 2003) (explaining that though numerous events that occurred in district likely would bear

little weight in liability determination, it was sufficient that the events constituted a significant part of the "entire sequence" and "historical predicate" of the events giving rise to the claim.).

Therefore, the jurisdictional and venue requirements are met for the proposed transferee district courts where Plaintiffs' alleged trafficking took place.

### b.  Discretionary Transfer

Next, this Court must assess whether this Court *should* transfer these cases to another district for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Generally, a defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice in forum. *Shanehchian*, 251 F.R.D. at 289. A showing of equal convenience (or inconvenience) between forums is not enough to obtain transfer of venue. *Id.* at 292. Some cases must either be dismissed or transferred for lack of personal jurisdiction or improper venue, or both. This court will apply the discretionary transfer factors, however, to all cases as it must assess whether it is in the interest of justice to dismiss or transfer these cases to a different district.

### 1.  Private Interest Factors

#### a. Plaintiffs' choice in forum and convenience of parties

Plaintiffs have chosen to file these suits in the Southern District of Ohio. Traditionally, a plaintiff's choice in forum is given substantial deference, but it is afforded less weight when the plaintiff chooses a forum that is not her residence. *Schoenfeld v. Mercedes-Benz USA, LLC*, No. 3:20-cv-159, 2021 WL 3579016, at *2 (S.D. Ohio Aug. 13, 2011). When "the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign [to the district], however, this assumption is much less reasonable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). The choice, however, is afforded even less deference where the operative facts took place elsewhere. *See Kay*, 494 F. Supp. 2d at 850, 852 (Rice, J.) (holding that

33

transfer to South Carolina was warranted, because the operative facts took place there, and the "absence of events connecting the litigation to Ohio negates the deference ordinarily given to a plaintiff's choice of venue.").

Only ten Plaintiffs live in Ohio (*L.G.*, ECF No. 28 at 25) and because most of the plaintiffs are foreign to this jurisdiction this factor is weighed differently depending on the defendants joined and the location of the operative facts. Where the only Defendant is Red Roof, more deference is given to the Plaintiffs' choice in forum because Red Roof's headquarters is in this district and at least one of the locations of the operative facts related to Defendant Red Roofs' liability is here. Where there are multiple Defendants or non-Red Roof Defendants whose headquarters are elsewhere, however, this Court will afford little weight to Plaintiffs' choice in forum. Because most parties will have to travel regardless of the forum, however, this factor is neutral overall in the transfer analysis.

*b. Convenience of witnesses and ability to compel attendance of unwilling witnesses*

While witness' convenience is considered one of the most important factors in determining whether to grant a motion to change venue, a court can only properly assess its importance with information about the witnesses and their material testimony. *See Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) (explaining that the parties should provide each witness's name and an outline of what material testimony that witness would provide for the court to assess which witnesses are key witnesses and the impact of inconveniencing them). Plaintiffs allege that Defendants have failed to identify any witnesses who would be unwilling to travel to the Southern District of Ohio, yet Defendants do not know the identities of Plaintiffs. Keeping the identifies of Plaintiffs private is a necessary step in this type of litigation. That said, without this

34

information, Defendants are unable to identify anything more specific than general categories of witnesses who could have been present during the alleged conduct.

Plaintiffs focus on the importance of proximity to corporate executive witnesses, while Defendants suggest that former hotel employees, customers, investigating police, treating physicians, family member, hotel guests, and sex traffickers themselves are the non-party witnesses of concern. These cases present a unique circumstance because more than one forum may be a location were a substantial part of the events giving rise to the cause of action occurred, *see* 28 U.S.C. § 1391(b)(2). Plaintiffs must demonstrate that they were trafficked as a predicate to these claims, making the witnesses to their trafficking important. But Plaintiffs raise a direct civil liability claim against Defendants' executive decision-makers; therefore, convenience of corporate executives also proves important.

For many Plaintiffs, years have passed since they were trafficked, so there is no guarantee that non-party witnesses will be located at the scene of their trafficking. *L.G. v. Red Roof Inns, Inc.*, No. 2:22-CV-1924, 2022 WL 4091837, at *4 (S.D. Ohio Sept. 7, 2022) (because trafficking occurred between 2009–2012, there is no guarantee that non-party witnesses will be located where the plaintiff was trafficked so transfer to a new venue will not necessarily make litigation more convenient). Conversely, only Red Roof has its principal place of business in the Southern District of Ohio, making it slightly more convenient for their executive witnesses. Additionally, as the Defendants acknowledged during oral argument, the same executives across the cases likely will be called as witnesses given the similarity in Defendants named. Because there are many cases already pending before this Court, this factor weighs slightly against transfer, since transfer will only further inconvenience Defendants by requiring their executive witnesses to travel all over the country should these cases be transferred.

Without more information about the plaintiffs and potential witnesses, however, this Court cannot assess properly the impact of this factor. Regardless of the location of this litigation, there is no guarantee that non-party witnesses will be present or respond to subpoena. *L.G.*, 2022 WL 4091837, at *4 (explaining that alleged sex traffickers are unlikely to appeal at trial regardless of subpoena). Therefore, the proposed transferee courts pose the same level of inconvenience, and this factor slightly weighs against transfer.

### c. Locus of operative facts and access to proof

The allegations in this case revolve around sex trafficking and corporate policies to ignore said sex trafficking. As this Court has already discussed at length, the operative facts giving rise to these claims occurred across many forums, and the associated evidence is spread across different forums. As such, a generalized assertion that "witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue." *A.C. v. Red Roof Inns, Inc.*, No. 2:19-CV-4965, 2020 WL 3256261, at *3 (S.D. Ohio Jun. 16, 2020) (quoting *MJR Intern, Inc. v. Am. Arb. Ass'n*, No. 2:06-CV-0937, 2007 WL 2781669, at *3 (S.D. Ohio Sept. 24, 2007)). Further, Defendants have failed to demonstrate how it is too burdensome to transfer records electronically. Without "identifying some documentary evidence that would be unavailable in this district or is too bulky or difficult to transport, this factor matters little." *Id.*; *see also Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D. N.Y. 2007), *aff'd*, 599 F. 3d 102 (2d Cir. 2010) ("[L]ocation of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

In the twenty-two cases where Red Roof is the only defendant named, this factor weighs against transfer because any physical evidence of Red Roof's executive decision-making would likely be at their headquarters in New Albany, Ohio. Conversely, for Plaintiffs, any physical

36

evidence of their trafficking, if still in existence, is likely within the forums where they were trafficked. Even though said physical evidence may be held elsewhere, Defendants have not alleged any facts to persuade this Court that said evidence would be difficult to acquire and transport to this forum. Therefore, this factor weighs against transfer as electronic evidence can be moved easily and there are no facts to suggest physical evidence is inaccessible to this Court.

Because the unique, nationwide nature of sex trafficking, the private interest factors for the parties largely are neutral and fail to demonstrate that the proposed transferee districts are more convenient forums than this Court. *Shanehchian*, 251 F.R.D. at 292 ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another.").

### 2. *Public Interest Factors*

#### a. Trial efficiency and court's familiarity with the governing law

The "interest of justice" factor is of paramount importance in this Court's transfer analysis. One frequently mentioned consideration under the public interest umbrella is "the desire to avoid multiplicity of litigation resulting from a single transaction or event." 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.). This is of particular importance for the six multi-defendant cases[21] where venue is improper and this Court lacks personal jurisdiction over the non-Red Roof defendants. For these cases, this Court can: (1) dismiss the non-Red Roof defendants without prejudice; (2) sever the non-Red Roof defendants from the cases where Red Roof is also a defendant and transfer the cases against the non-Red Roof defendants to an appropriate district; or (3) under 28 U.S.C. §§ 1404(a) and 1406(a), transfer the entire action to a proper venue for all defendants. As previously explained, permitting "a situation in which two cases involving precisely the same issues are

---

[21] *R.C., S.C., J.S., J.C., C.M., J.T.*

simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). This factor weighs in favor of transferring these six cases in their entirety, rather than severing or dismissing certain defendants, to a district with personal jurisdiction and where venue is proper.

Plaintiffs currently have more than forty TVPRA cases pending against the same hotel defendants in this district. This Court has already reached the motion to dismiss stage in several related cases that raise the same claims against the same hotel defendants. Therefore, this Court has already assessed the merits of Plaintiffs' claims under the TVPRA, making this Court well-versed in the facts and law of these cases. *Cf. Jackson v. Intel Corp.*, No. 2:08-CV-154, 2009 WL 749305, *4 (E.D. Tex. 2009) (where plaintiff filed nine infringement actions and defended two declaratory judgment actions in transferee district, judges of that district were provided with significant familiarity with the patent-in-suit, justifying transfer); *see also Starr Indemnity & Liability Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 442 (S.D.N.Y. 2018) (denying discretionary transfer where court had adjudicated a number of discovery disputes and dispositive motions and held multiple conferences). Here, this Court's familiarity with the merits of hotel TVPRA litigation weighs against transfer. Defendants have not demonstrated that the proposed transferee districts are in a substantially better position to litigate this matter. *Cf. Limited Serv. Corp. v. M/V APL Peru*, No. 2:09-CV-1025, 2010 WL 2105362, *5 (S.D. Ohio 2010) (Transferee judge's familiarity with the two cases, and the likelihood that without transfer, one judge will invest substantial time and effort to adjudicate the controversy when even a portion of that labor may be duplicative of the work already done is given great weight, as is the need to promote the fair and consistent

resolution of both cases). Finally, because the TVPRA is a federal statute, the transferee courts are no better positioned to interpret it than this Court. This factor weighs against transfer.

### b. Docket congestion

A court should not look to docket conditions to serve the court's convenience when considering § 1404(a) transfer. *Fannin v. Jones*, 229 F.2d 368, 369–370 (6th Cir. 1956). This is a non-issue for this Court because the disparity in caseload between this Court and other district Courts arises from this Court's handling of one of the largest multidistrict litigation cases in the country: *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. Thus, the statistics Defendants cite do little to support its position. *Olin-Marquez*, 586 F. Supp. 3d at 780.

### c. Public's interest in litigating the matter at home

While the fact that these plaintiffs were trafficked in the first place is of concern to the district in which the plaintiffs were trafficked, the heart of Plaintiffs' allegations is corporate misconduct. According to Plaintiffs' theory of the case, the common policy to ignore sex trafficking in these hotels originated in Defendants' principal places of business, where corporate executive decision-making occurred. Because Defendants Red Roof have their principal place of business in New Albany, Ohio, the residents of the Southern District of Ohio have a strong interest in determining whether Defendants Red Roof operated their branded hotels outside the boundaries of the TVPRA in furtherance of human sex trafficking. Therefore, this factor weighs against the transfer of the twenty-two cases brought against Defendants Red Roof.

This factor is of little value when evaluating the appropriateness of transfer of the six cases[22] brought by minors against multiple parties or non-Red Roof defendants. First, as

---

[22] *G.M.*, *A.M.*, *C.C.*, *E.C.*, *T.D.P.*, and *K.F.*

extensively discussed *supra*, the purpose of 18 U.S.C. § 2255 is to give minors harmed in violation of the TVPRA the flexibility to sue in any appropriate federal district court where venue is proper. Hence, a location's interest in the matter is weighed less heavily than the private interest of the minor harmed when filing in that district. Second, the fact that Plaintiffs were trafficked all over the country and that they allege corporate misconduct resulting in policies applied around the United States demonstrates that this dispute is not local in nature such that one forum has more of an interest in the outcome of this dispute than another. *See Liberty Mut. Fire Ins. v. Costco Wholesale Corp.*, No. 06-Civ-5226, 2007 WL 2435159, at *6 (S.D.N.Y. Aug. 28, 2007) (finding that dispute did not present a "localized controversy" where "the litigation itself concerns an insurance policy negotiated, executed, and procured in Washington and California, and the Policy at issue covers 260 additional properties in six different countries.").

Because the remaining non-minor cases[23] in which non-Red Roof defendants are named must be transferred or dismissed due to jurisdictional and venue deficiencies, this factor is neutral as it pertains to those cases.

### d. Systemic integrity and fairness

Here, the Court must grapple with the realistic effects and consequences of transferring these cases to districts across the country. Sex trafficking inherently is a covert, yet pervasive, industry that results in "crime[s] of violence with [their] roots, with [their] genesis, in economics." *United States v. White*, Case 2:17-cr-021, ECF No. 46 (S.D. Ohio 2018) (Marbley, J.). The 2008 amendments to the TVPRA, adding the direct civil liability provision under § 1595, indicates that Congress intended to hold responsible not only traffickers, but anyone who "knew or should have known" they participated in a venture in violation of federal sex trafficking laws. *Schair*, 2014 WL

---

[23] *R.C.*, *S.C.*, *J.S.*, *J.C.*, *C.M.*, and *J.T.*

12495639, at *3 (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator). Because the public interest factors are the dominant factors in this analysis and they weigh against transfer of all but six of the cases in which this Court either lacks personal jurisdiction or venue is improper, it is in the interest of fairness and judicial integrity to allow these cases to proceed to the merits in a district well-versed in the controlling law and that has a strong interest in enforcing the TVPRA under the beneficiary theory. Transferring these cases does not serve the interest of justice substantially more than this district, but only distracts from the merits of this litigation. *Olin-Marquez*, 586 F. Supp. 3d at 781 (finding that systemic integrity and fairness weighed against transfer of a FLSA action because the harm alleged by plaintiff would likely continue to occur and transfer could chill future plaintiffs seeking relief in their home forum). Transfer, not dismissal, of the multi-defendant or non-Red Roof defendant cases is in the interest of justice and aligns with the goals of judicial integrity and fairness.

As detailed *supra*, there are at a minimum two locations where a substantial series of events occurred that serve as the bases of these lawsuits. As such, the changing litigation landscape requires this Court to reconsider its previous calculus in *C.T.* regarding the § 1404(a) factors. The public interest factors have become demonstrably more important, requiring this Court to consider the impact of transferring these cases as a whole, and not in isolation. Therefore, absent jurisdictional or venue deficiencies, this Court will not exercise its discretionary power to transfer the cases to a different district court pursuant to § 1404.

### G. Improper Joinder of Parties

#### 1. Parties' Arguments

Defendants Choice and IHG allege that the claim against them should be severed for improper joinder of parties because Plaintiffs have failed to demonstrate how their injuries against

the various Defendants arise out of the same occurrence or that there is a question of law or fact common to all defendants. (*S.C.*, ECF No. 48 at 14–17). Defendants argue that "courts have required the transactions or occurrences that constitute a 'series' to have some substantial relationship to one another, and have explicitly rejected the argument that mere commonality among otherwise unrelated events is enough to make them part of the same series." (*S.C.*, ECF No. 48 at 16 (quoting *Aaron v. Aetna*, 2022 WL 2834767, at *3 (S.D. Ohio July 19, 2022); 46 at 4 Defendants maintain that because they did not act in concert with one another and the trafficking happened at differently owned hotels, Plaintiffs' claims are not sufficiently related to form part of the same series. (*S.C.*, ECF Nos. 48 at 14–17; 46 at 3–6). Defendants assert that the common questions of law or fact material to these claims are limited at best because Plaintiffs pled different facts for each defendant and the frequency of the alleged trafficking at each location will impact a given Defendants' relationship to the franchisee and trafficking events. (*S.C.*, ECF Nos. 48 at 15–16; 46 at 6; 44 at 5 (citing *A.D. v. Cavalier Mergersub LP*, Case No. 2:33-cv-095, 2022 WL 4357989, at *4 (M.D. Fla. Sept. 20, 2022) ("while Plaintiff's TVPRA claim against each defendant may raise similar legal issues, they are not logically related because they do not arise from common operative facts. Rather, the sex trafficking that occurred at each defendant hotel's property was a separate 'transaction' or 'occurrence.'"); 58 at 8).

Plaintiffs respond that it is sufficient for them to allege that their claims arose out of a series of sex trafficking occurrences and to demonstrate that there likely will be overlapping proof and duplicative testimony to meet the joinder requirements under Rule 20. (*L.G.*, ECF No. 30 at 20–21). According to Plaintiffs, they can rely on the logical relationship test because they have indivisible injuries, similar to sustaining an injury in an accident, which is subsequently aggravated by an unrelated tortfeasor. *Id.* at 21 (citing *Papachristos v. Hilton Mgmt., LLC*, No. 14-CV-5501,

2015 WL 1094852, at *4 (N.D. Ill. March. 10, 2015) (holding that plaintiff could properly join both the hotel where she slipped and fell and the driver who rear-ended her in a collision over two years later)). Plaintiffs argue that they were trafficked back and forth between the different hotels, and that each defendant contributed to the ongoing injury by not acting to stop the trafficking, knowing that it would likely continue elsewhere. (*Id.* at 22 – 23). Because Plaintiffs allege the same injury against each Defendant, Plaintiffs argue that Defendants will raise the "empty chair" defense and point to other defendants for Plaintiffs' alleged injuries. (*Id.* at 21).

## 2.  Standard of Review

A plaintiff may join defendants in one action where any right to relief "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Broad discretion is granted to district courts to add or drop parties on motion of any party or of its own initiative at any stage of the action if it is on just terms. *United States v. Katz*, 494 F. Supp. 2d 645, 648 (S.D. Ohio 2006) (citing Federal Rules of Civil Procedure 21). Any motion to dismiss for improper joinder by a party, however ,should be treated as a motion for severance, because the appropriate remedy for misjoinder under the Federal Rules of Civil Procedure is severance, not dismissal. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party.").

The Sixth Circuit requires the transactions or occurrences that constitute a "series" to have some substantial relationship to one another and rejects the argument that "commonality among otherwise unrelated events is enough to make them part of the same series." *Harris v. Erdos*, No. 1:21-CV-104, 2022 WL 3053496, at *5 (S.D. Ohio Aug. 3, 2020); *see Michaels Bldg. Co. v. Ameritrust Co.*, 848 F. 2d 674, 682 (6th Cir. 1988) (affirming severance and dismissal of misjoined

RICO and antitrust claims where "the various transactions . . . 'involve different banks, different contracts and different terms' "); *DIRECTV, Inc. v. Collins*, 244 F.R.D. 408, 410 (S.D. Ohio 2007) ("transactional relatedness element" of Rule 20 unmet where "transactions are logically related to one another" only "in the same way that purchases of milk from the grocery store are logically related to each other: each transaction involves a . . . similar good for a similar purpose") (citation and internal quotation marks omitted); *Katz*, 494 F. Supp. 2d at 648–49 (similar but unrelated fraudulent conveyances by different defendants in connection with government cleanup of single hazardous waste site did not form same series of transactions).

Finally, it is appropriate to address potential misjoinder of parties at an early stage of the case. *Monda v. Wal-Mart, Inc.*, No. 3:19-CV-155, 2019 WL 7020427, at *2 (S.D. Ohio Dec. 20, 2019) (addressing both a motion to sever and a motion to dismiss by defendants together); *see also Reynolds v. Merck Sharp & Dohme Corp.*, No. 2:15-CV-397, 2016 WL 3090951, at *1 (N.D. Ohio June 2, 2016) ("deferring a ruling [on a motion to sever] does not necessarily promote efficiency"). That said, some Courts have deferred rulings on misjoinder where the limited issue before the court was unrelated or the case was in its early stages. *Sony Music Entm't Inc. v. Does* 1–40, 326 F. Supp. 2d 556, 568 (S.D.N.Y. 2004) (concluding that it was premature to consider the issue of joinder when resolving a motion to quash; "Although they [a doe defendant and *amici curiae*] raise a fair issue as to whether all these claims against forty apparently unrelated individuals should be joined in one lawsuit, discussion of joinder is not germane to the motions to quash before the Court, as the remedy for improper joinder is severance, *see* Fed. R. .P. 21, and not the quashing of the subpoena at issue here"); *Motown Record Co., L.P. v. Does 1–252,* No. 1:04–CV–439–WBH (N. D. Ga. Mar. 1, 2004) (concluding that a decision regarding the issues of personal jurisdiction and joinder raised by *amici curiae* would be premature, because no party to the action had raised

any of those issues); *UMG Recordings v. Does 1–199,* No. 04–093(CKK) (D.D.C. Mar. 11, 2004) (concluding that a decision regarding the issues raised by *amici curiae* would be premature).

### 3. Court's Analysis & Findings

It is premature for this Court to rule on Defendant Choice and IHG's improper joinder arguments. First, venue is improper for three of the cases in which Choice and IHG are named as defendants and to which the misjoinder argument applies.[24] A court that is faced with an argument that it lacks personal jurisdiction or that venue is improper, must resolve that issue prior to addressing the merits of any claim. *Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-CV-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017); *see also Larson v. Galliher,* No. 2:06-cv-1471, 2007 WL 81930 at *1 (D. Nev. Jan. 5, 2007) ("Before reaching the merits of the cybersquatting allegation and corresponding request for injunctive relief, the Court must first decide the threshold issue if jurisdiction and venue is appropriate in this matter."); *Baldwin Hardward Corp. v. Harden Industries, Inc.*, 663 F. Supp. 82, 86 (S.D.N.Y. 1987) ("In light of our disposition of the venue issue, we decline to reach the merits of [plaintiff's] motion for a preliminary injunction."). Because this Court transfers these three cases to the Northern District of Ohio, where venue is proper, this Court declines to reach the merits of the misjoinder argument for *R.C.*, *S.C.*, and *C.M.*

Second, this Court also declines to address the remaining four cases to which the misjoinder argument applies, Defendant Choice is named, and where Plaintiffs were minors at the time of the alleged trafficking.[25] Federal Rule of Civil Procedure 21 affords Court considerable latitude as to when issues of joinder should be determined. *Arista Records, LLC v. Does 1-11*, 2008 WL 4823160, at *5 (N.D. Ohio Nov. 3, 2008) (Federal Rule of Civil Procedure 21 provides that a court,

---

[24]*R.C.*, *S.C.*, and *C.M.*
[25] *G.M.*, *E.C.*, *T.D.P.*, *K.F.*

on motion or on its own, may "*at any time*, or on just terms, add or drop a party" or "sever any claim against a party.") (emphasis in original). In these four minor cases in which Choice is named, Defendants have yet to be served or to formally appear. Additionally, the circumstances under which this Court ordered oral argument were unique as the parties were instructed to address the limited issue of the appropriate venue for each case. While this Court appreciates Defendants Choice's efficient use of this briefing schedule, the nature of simultaneous briefing—which was ordered here—does not provide the parties the same level of substantive response available when the typical briefing schedule is followed. For example, Defendants Choice and IHG were not afforded the opportunity to file a reply brief to Plaintiffs' response on the misjoinder issue. Finally, the limited briefing provided to this Court on the issue of misjoinder demonstrates that the parties propose a novel application of Federal Rule of Civil Procedure 21 to the TVPRA on which very few courts have ruled. This Court finds that the information before it is insufficient to make an informed decision on misjoinder at this stage of the litigation.

For these reasons, this Court concludes this briefing schedule presents unusual circumstances akin to those cited *supra* in which other Courts delayed a ruling on misjoinder. Therefore, this Court declines to rule on the merits of Defendants Choice and IHGs' misjoinder arguments at this time, but the parties may raise the issue in subsequent briefings.

### III.   CONCLUSION

For the aforementioned reasons, this Court **DENIES** Defendant's Motion to Transfer Venue in L.G. (*L.G.*, ECF No. 11) and **DENIES** Defendants Red Roofs' Motion to Transfer Venue in M.H. (*M.H.*, ECF No. 15). Unless indicated below, this Court will retain jurisdiction over the above-captioned cases. The following cases are **TRANSFERRED** to:

- United States District Court for the Northern District of Ohio: *R.C.*, 2:22-cv-2690; *S.C.*, 2:22-cv-2734; *J.S.*, 2:22-cv-3080; *J.C.*, 2:22-cv-3340; and *C.M.*, 2:22-cv-3798.

- United States District Court for the Eastern District of New York: *J.T.*, 2:22-cv-3842.

The stays in the above-identified cases are hereby **LIFTED**. (*S.C.* ECF No. 37). The presiding Magistrate Judge will set a conference by separate order.


       **IT IS SO ORDERED.**


                                      **ALGENON L. MARBLEY**
                                      **CHIEF UNITED STATES DISTRICT JUDGE**


       **DATED: April 25, 2023**